IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ARMANDO ORTEGA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARK RITCHIE, et al., ) <br> ) <br> Defendants. ) <br> ) | No. C 09-5527 SBA (PR) <br><br> **REVIEWING FIRST AMENDED COMPLAINT; ORDERING SERVICE OF COGNIZABLE CLAIMS; DISMISSING NON-COGNIZABLE CLAIMS; AND ADDRESSING PLAINTIFF'S PENDING MOTIONS** <br><br> (Docket nos. 29, 30) |

## BACKGROUND

Plaintiff, who is currently incarcerated at Santa Clara County Jail (SCCJ), filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. In his complaint, Plaintiff named the following Defendants: the City of San Jose; the SCCJ; SCCJ Psychiatrist Dr. Mark Ritchie; SCCJ Officers N. Muhar and A. Chang; and Doe Defendants.

In an Order dated May 2, 2011, the Court dismissed Plaintiff's complaint with leave to amend. The following factual background is taken from the Court's May 2, 2011 Order:

> Plaintiff states that beginning in March, 2007, he was housed at SCCJ as a pretrial detainee facing charges of assault with a deadly weapon. (Compl. at 3a.) He claims suffers from a "server [sic] mental disorder bi-polar schizophinnia [sic]," and that he has a "history of 12 year medication [and] hospitalization 1997 to 2009." (Id.) In September, 2007, he was found "incompetent to stand trial." (Id.) He alleges that from June 6, 2007 through September 4, 2007, he was denied mental health treatment. (Id. at 3c.) He alleges that "low medication dosage made [him] think irrationally and spontaneous to two violent out-burst." (Id.)
>
> On December 4, 2007, he was transferred to Metropolitan State Hospital for "seven months" before he was transferred again back to SCCJ on July 16, 2008. (Id. at 1, 3a-3b.) On August 13, 2008, his medication was "lowwered [sic] causing [him] to suffer three week's no sleep . . . ." (Id. at 3d.)
>
> On September 3, 2008, Plaintiff claims Defendants Muhar and Chang came to transport him to Metropolitan State Hospital. (Id. at 3e.) Prior to transporting him, Plaintiff claims an "unknow[n] sergant [sic] did and two male philippino [sic] officers pepper[]-sprayed [him], cuffed and beat [him]." (Id.) He was not decontaminated and "put on a van [for a] 6 hour drive . . . ." (Id.) Plaintiff claims he "believed they were going to kill [him]" and he "refused to cuff-up;" therefore, he "got [a] black-eye, red abration[s] [on] both eyes, [and a] puffy lip." (Id.) When he arrived at Metropolitan State Hospital, he was "decontaminated and treated." (Id. at 3f.) Plaintiff does not specify when he was transported back to SCCJ.

> From February 26, 2009 through September 29, 2009, Plaintiff was housed at the "Main Jail" at SCCJ where he was again "denied full mental health treatment." (Id. at 3e.)
>
> On March 13, 2009, Plaintiff was "placed in a disciplinary cell called 'Ice Box' cause [of] it's [sic] coldness." (Id. at 3g.) He claimed this was a disciplinary action which he received without a disciplinary hearing or a "write-up." (Id.) Plaintiff also claims he "exhausted all remedies trying to get rehoused." (Id. at 3h.)
>
> Finally, Plaintiff claims that "water is not too well too [sic] drink . . .[and] smells like urine." (Id.)
>
> On November 5, 2009, Plaintiff filed the present action while he was housed at Patton State Hospital. Plaintiff does not specify when he was initially transferred to Patton State Hospital.
>
> On December 15, 2009, Plaintiff filed a notice of change of address indicating that he has been transferred back to SCCJ.
>
> Plaintiff seeks monetary damages and injunctive relief in the form of being "rehoused." (Id. at 3d-3g.)

(May 2, 2011 Order at 1-3 (footnote omitted).)

In its May 2, 2011 Order, the Court indicated that, in his original complaint, Plaintiff had attempted to state four claims against Defendants: (1) the use of excessive force; (2) deliberate indifference to his serious medical needs; and (3) a municipal liability claim against the City of San Jose and the SCCJ. He also raised claims against Doe Defendants. The Court dismissed the complaint with leave to amend. First, the Court directed Plaintiff to explain whether he had exhausted all available administrative remedies with respect to each claim. Next, Plaintiff's excessive force claim, while found to be cognizable, was dismissed with leave to amend because he did not provide the specific names of the Defendants linked to this claim. Further, Defendants Muhar and Chang, the only Defendants named, were not linked to the excessive force violation. Similarly, the deliberate indifference claim was also dismissed with leave to amend because Plaintiff named Defendant Ritchie and various Doe Defendants; however, he did not link these Defendants to his deliberate indifference claim. The Court also found that Plaintiff had not alleged grounds for municipal liability against the City of San Jose and the SCCJ based on any theory other than that of respondeat superior, which is not a sufficient ground for municipal liability. The Court informed Plaintiff that if he could, in good faith, assert facts which state constitutionally cognizable claims for relief against these municipal Defendants, then he could include them in his amended complaint.

2

Finally, the Court dismissed Plaintiff's claims against the Doe Defendants. It directed Plaintiff to move for leave to amend to add them as named defendants should he learn the identities of these Doe Defendants.

On May 16, 2011, Plaintiff filed a "Pitchess motion"[1] in the Santa Clara County Superior Court Civil Division and the Chief of Corrections, Sheriff of Santa Clara County and/or his representative to compel the SCCJ to release information pertaining to the Doe Defendants as well as to Defendants Muhar and Chang. (Attach. to Pl.'s May 20, 2011 filing (docket no. 21), Mot. for Disc. (Pitchess Mot.) dated May 16, 2011 at 2-4.)

On June 15, 2011, Plaintiff requested a sixty day extension from this Court, from June 2, 2011 to August 2, 2011, to file his amended complaint, because his "motion of discovery . . . Pitchess Motion [was] taking more time than expected in courts and to get photo copies takes a week or 2 weeks and to mail legal mail a week or two." (Pl.'s Req. for Extension of Time to File Am. Compl. at 1.)

On June 21, 2011, Plaintiff filed his amended complaint.

The Clerk of the Court rejected Plaintiff's aforementioned request for an extension, upon receiving Plaintiff's amended complaint.

The Court now conducts its review of the amended complaint pursuant to 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

**DISCUSSION**

**I.     Exhaustion of Administrative Remedies**

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until . . . administrative remedies . . . available are exhausted." 42 U.S.C. § 1997e(a).

---

[1] A Pitchess motion is the procedural method established in Pitchess v. Superior Court, 11 Cal. 3d 531 (1974), and later codified by California Penal Code § 832.7 and California Evidence Code §§ 1043 and 1046, that allows for discovery of otherwise privileged personnel records.

3

As explained above, in its Order dated May 2, 2011, the Court dismissed with leave to amend Plaintiff's complaint because it was not readily apparent that Plaintiff exhausted his administrative remedies with respect to any or all of his claims before filing this action. (May 2, 2011 Order at 5.)

Plaintiff alleges that he failed to exhaust his administrative remedies because jail officials refused to accept his grievances relating to his claims. If Plaintiff's allegations are true, no administrative remedies were available to him, and Plaintiff is excused from the exhaustion requirement. In any event, exhaustion is an affirmative defense that must be raised by Defendants after service of Plaintiff's complaint. See Wyatt v. Terhune, 280 F.3d 1244, 1245 (9th Cir. 2002). Accordingly, the Court will now screen the claims in his amended complaint to determine whether Defendants are required to respond.

## II. Legal Claims

### A. Use of Excessive Force

As explained above, in its May 2, 2011 Order, the Court dismissed with leave to amend Plaintiff's excessive force claim. (May 2, 2011 Order at 6.) Specifically, Plaintiff had to name the Defendants to be served, or link Defendants Muhar and Chang to his excessive force claims. (Id.) In his amended complaint, Plaintiff neither linked Defendants Muhar and Chang to his excessive force allegations, nor did he name the other Defendants to be served. In fact, Plaintiff completely omitted the excessive force claim from his amended complaint. Accordingly, Plaintiff's excessive force claim is DISMISSED without prejudice against Defendants Muhar and Chang.

### B. Deliberate Indifference to Serious Medical Needs

As mentioned above, in its May 2, 2011 Order, the Court dismissed with leave to amend Plaintiff's deliberate indifference to serious medical needs claim and explained how he could correct its deficiencies, stating:

> In order to state cognizable deliberate indifference claim, Plaintiff must (a) identify the responsible individual or individuals for each incident; (b) allege that the responsible individual or individuals were subjectively aware that Plaintiff had serious medical needs; and (c) allege facts demonstrating that the individual or individuals acted or failed to act with deliberate indifference toward his serious

4

> medical needs.  Because Plaintiff has not yet made sufficient allegations to state cognizable claims for deliberate indifference toward his serious medical needs or to name the responsible individuals, these claims are DISMISSED WITH LEAVE TO AMEND.  Plaintiff may reassert the claims in an amended complaint if he can make the allegations noted above.

(May 2, 2011 Order at 8.)

In his amended complaint, Plaintiff has now identified the Defendants to be served and linked them to his deliberate indifference claim.  In sum, he alleges a deliberate indifference claim stemming from the following dates: March 22-24, 2007; August 7-9, 2007; August 9, 2007-September 4, 2007; September 19, 2007-December 4, 2007; July 16, 2008-September 3, 2008; February 29, 2009-May 7, 2009; and May 14, 2009-September 29, 2009.  Plaintiff links his claims to the following Defendants:  previously-named Defendant Ritchie as well as SCCJ Psychiatrists Dr. Mark Ritchie, Dr. Amarjit Grewal, Dr. S. Khan, Dr. B. Purdy, and Dr. G. Vansales.  (Am. Compl. at 3A-E.)

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A prison official is deliberately indifferent if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  But medical negligence, or even gross negligence, is not enough to state a constitutional claim under 42 U.S.C. § 1983.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence insufficient to state claim for denial of medical needs to prisoner); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (negligence or harassment related to medical problems not enough to state violation of Eighth Amendment).

According to his amended complaint, from 1997 to 2011, Plaintiff received treatment for a bi-polar disorder and schizophrenia.  (Am. Compl. at 3(B).)  Plaintiff alleges that from March 22-24, 2007, Defendants Khan and Purdy denied him full access to mental treatment by: (1) failing to provide him with the proper medical dosages to combat his mental disorders; and (2) failing to put him in the Housing Mental Health Ward.  (Id.)  Plaintiff alleges that as a result of Defendants Khan and Purdy's failure to provide him with the necessary amount of medical dosages that he became "unstable," started "hearing voices," and had racing and homicidal thoughts.  (Id.)

From August 7-9, 2007, Plaintiff alleges that Defendant Grewal "fully treated" his mental disorders. (Id. at 3(C).) Plaintiff also alleges that his mental disorders had expanded to include the sincere belief that "officers were going to kill him" and his own desire to assault "officers and others." (Id.) However, Plaintiff alleges that on August 9, 2007, Defendant Grewal stopped "the full health treatment." (Id.) Furthermore, from August 9, 2007 to September 4, 2007, Defendant Purdy decreased Plaintiff's treatment without any explanation. (Id.)

On September 19, 2007, the trial court found Plaintiff "incompetent to stand trial." (Id.) Despite the trial's court determination that Plaintiff was not competent enough to stand trial, Defendant Purdy continued to provide Plaintiff with lower levels of medication from September 19, 2007 to December 4, 2007. (Id.) Plaintiff also alleges that Defendant Varsales was in charge of his mental health treatment from March 24, 2007 through December 4, 2007; however, it seems that Defendant Varsales failed to intervene when Plaintiff was denied treatment. (Id. at 4d.)[2]

From December 4, 2007 to July 16, 2008, Plaintiff was transferred to a Metropolitan State Hospital where it appears his medical dosages were increased. (Id. at 3(D).) When Plaintiff returned to SCCJ on July 16, 2008, Defendant Grewal examined him and again lowered his medical dosages, causing him to "suffer" for "three weeks" until August 13, 2008. (Id.) Furthermore, Plaintiff suffered sleep deprivation and began sleeping for only four hours, "every 3 days" until September 3, 2008. (Id.) On September 3, 2008, the court sent Plaintiff back to the Metropolitan State Hospital. (Id.)

From February 29, 2009 to May 7, 2009, upon returning to SCCJ, Plaintiff alleges that Defendant Ritchie "adjusted" his "medication" "several times," causing him to hear voices, suffer sleep deprivation, and have racing thoughts. (Id. at 3(D).)

Furthermore, from May 14, 2009 to September 29, 2009, Defendant Ritchie reduced Plaintiff's treatment. (Id. at (3E).) On September 29, 2009, Plaintiff was transferred to Patton State Hospital. (Id.) On January 12, 2010, Plaintiff returned to SCCJ, where he again suffered from sleep deprivation and continued to hear voices. (Id.)

---

[2] Plaintiff has attached several pages that are unnumbered after page "4" of his amended complaint; therefore, the Court has numbered them as pages "4a" through "4n."

On August 13, 2008, Plaintiff's request to remain on the high level medical dosages administered to him at Metropolitan State Hospital were denied. (Id.)

Liberally construed, the Court finds that Defendants had access to Plaintiff's medical records and history, and thus possessed privileged access to the types and quantities of medical dosages that were being administered to him at both the Metropolitan State and Patton State Hospitals.

Accordingly, the Court finds that Plaintiff has stated a cognizable deliberate indifference to serious medical needs claims against Defendants Ritchie, Grewal, Khan, Purdy, and Vansales. The Court will order service of this claim so that these Defendants may address Plaintiff's deliberate indifference claim.

### C. Municipal Liability Claim

As explained above, in its May 2, 2011 Order, the Court dismissed with leave to amend Plaintiff's municipal liability claim against the City of San Jose and the SCCJ. (May 2, 2011 Order at 8.) In his amended complaint, Plaintiff did not correct the deficiencies of this claim by stating facts which state constitutionally cognizable claims for relief against these municipal Defendants. Similar to his excessive force claim, Plaintiff completely omitted the municipal liability claim from his amended complaint. Accordingly, Plaintiff's municipal liability claim against the City of San Jose and the SCCJ is DISMISSED without prejudice.

### D. Due Process Claim

Finally, Plaintiff raises a new claim in his amended complaint. Plaintiff alleges that Defendants SCCJ Lieutenant L. Rodriguez as well as SCCJ Classification Officers D. Gillotte[3] and Giut denied him his due process rights of making a statement, preparing a defense, attending a hearing, as well as receiving any notice of findings and dispositions prior to being held in administrative segregation and the "Ice-Box." (Am. Compl. at 3(F), 4h.)

Interests that are procedurally protected by the Due Process Clause may arise from two sources: the Due Process Clause and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty.

---

[3] Plaintiff mis-spelled Defendant Gillotte's name as "Gellotte" in his amended complaint. (Am. Compl. at 3(A).) The record shows that the correct spelling is "Gillotte." (Id. at 4h.)

7

Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995). A state may not impose such changes without complying with minimum requirements of procedural due process. See id.

The Court finds that Plaintiff has stated a cognizable due process claim because he alleges he was not afforded certain protections prior to being housed in administrative segregation. Because the exact nature of Plaintiff's placement in administrative segregation is unclear, the Court will order service of this claim so that Defendants Rodriguez, Gillotte, and Giut may address Plaintiff's due process claim.

### III. Plaintiff's Pending Motions

On April 20, 2012, Plaintiff filed three motions on a one-page document entitled, "Motion to Appoint Counsel," "Request Counsel for Case Management Conference," and a "Motion for Summary Judgment" (docket no. 29). On the same date, Plaintiff also filed another one-page document entitled, "Motion for leave to Allow Plaintiff Time to Conduct Legal Research" (docket no. 30). There is no further briefing to support any of his requests.

Plaintiff's "Motion for Summary Judgment" (docket no. 29) is DENIED as premature and, in addition, it is DENIED because it has been filed without any legal argument or support.

In its May 2, 2011 Order, the Court denied Plaintiff's prior request for appointment of counsel, stating as follows:

> On September 8, 2010, Plaintiff filed a letter with the Court requesting appointment of counsel to represent him in this action, stating that he cannot litigate this action on his own behalf because he suffers from a "mental-illness."
>
> The Court is unable to assess at this time whether exceptional circumstances exist which would warrant seeking volunteer counsel to accept a pro bono appointment. The proceedings are at an early stage and it is premature for the Court to determine Plaintiff's likelihood of success on the merits. Moreover, Plaintiff has been able to articulate his claims adequately pro se in light of the complexity of the issues involved. See Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004). In addition, Plaintiff has been directed to file an amended complaint to cure the pleading deficiencies of his complaint. Accordingly, the interests of justice do not require appointment of counsel at this time, and Plaintiff's request (docket no. 14) is DENIED.

(May 2, 2011 Order at 9.) For the same reasons as above, Plaintiff's second request for appointment

8

of counsel and his "Request [for] Counsel for Case Management Conference" (docket no. 29) at this time are DENIED. This does not mean, however, that the Court will not consider appointment of counsel at a later juncture in the proceedings; that is, after Defendants have filed their dispositive motions such that the Court will be in a better position to consider the procedural and substantive matters at issue. Therefore, Plaintiff may file a renewed motion for the appointment of counsel after Defendants' dispositive motion has been filed. If the Court decides that appointment of counsel is warranted at that time, then it can seek volunteer counsel to represent Plaintiff pro bono.

Finally, on April 20, 2012, Plaintiff filed a document entitled, "Motion to Pitition [sic] Court" (docket no. 30). Plaintiff requests the Court to compel SCCJ staff to "allow[] [him] to take 5 years of research legal documents pertaining to [his] cases" with him "to state prison upon transfer to state prison." (Apr. 20, 2012 Mot. to Petition Court at 1.) This motion is DENIED because Plaintiff has not shown a sufficient reason for this Court to interfere in the day-to-day operations of the jail. See Turner v. Safley, 482 U.S. 78, 84-86 (1987); Wright v. Rushen, 642 F.2d 1129, 1132 (9th Cir. 1981) (courts should avoid enmeshing themselves in minutiae of prison operations in name of constitution)

## **CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's excessive force against Defendants Muhar and Chang is DISMISSED without prejudice.

2. Plaintiff states a cognizable claim for deliberate indifference to his serious medical needs against Defendants Ritchie, Grewal, Khan, Purdy, and Vansales.

3. Plaintiff's municipal liability claim against the City of San Jose and the SCCJ is DISMISSED without prejudice.

4. Plaintiff states a cognizable claim for due process against Defendants Rodriguez, Gillotte, and Giut.

5. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the amended complaint and all attachments thereto (docket no. 23) and a copy of this Order to: **SCCJ Physicians**

**Dr. Mark Ritchie, Dr. Amarjit Grewal, Dr. S. Khan, Dr. B. Purdy, Dr. G. Vansales; as well as SCCJ Lieutenant L. Rodriguez (# 101-92); and Classification Officers D. Gillotte (# 2572) and Giut (# 2577 or #2517[4]).** The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the Santa Clara County Counsel's Office. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

6. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires Defendants to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, Defendants will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants have been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty-three (63) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty-three (63) days** from the date on which the request for waiver was sent or **twenty-one (21) days** from the date the waiver form is filed, whichever is later.

7. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

   a. No later than **ninety-one (91) days** from the date Defendants' answers are due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal

---

[4] Plaintiff states that Defendant Guit's badge number is "2577." (Am. Compl. 3(A).) However, the record includes an "Inmate Grievance Form" with Defendant Guit's signature and badge number. (Id. at 4i.) Defendant Guit's handwriting is difficult to decipher; therefore, the Court includes two interpretations of his badge number as "2577" and "2517."

10

Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

      b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **sixty-three (63) days** after the date on which Defendants' motions are filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

      c.      Defendants shall file a reply brief no later than **twenty-eight (28) days** after

1 the date Plaintiff's opposition is filed.

2         d.     The motion shall be deemed submitted as of the date the reply brief is due.
3 No hearing will be held on the motion unless the Court so orders at a later date.

4     8.     Discovery may be taken in this action in accordance with the Federal Rules of Civil
5 Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose
6 Plaintiff and any other necessary witnesses confined in prison.

7     9.     All communications by Plaintiff with the Court must be served on Defendants, or
8 Defendants' counsel once counsel has been designated, by mailing a true copy of the document to
9 Defendants or Defendants' counsel.

10     10.    It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court
11 informed of any change of address and must comply with the Court's orders in a timely fashion.

12     11.    Extensions of time are not favored, though reasonable extensions will be granted.
13 Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the
14 deadline sought to be extended.

15     12.    Plaintiff's second request for appointment of counsel and his "Request [for] Counsel
16 for Case Management Conference" (docket no. 29) are DENIED.

17     13.    Plaintiff's "Motion for Summary Judgment" (docket no. 29) is DENIED as premature
18 and, in addition, it is DENIED because it has been filed without any legal argument or support.

19     14.    Plaintiff's "Motion to Pitition [sic] Court" (docket no. 30) is DENIED.

20     15.    This Order terminates Docket nos. 29 and 30.

21 IT IS SO ORDERED.

23 DATED: 7/17/12

                                           SAUNDRA BROWN ARMSTRONG
                                           United States District Judge

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CARLOS A. ORTEGA,

        Plaintiff,

  v.

SAN JOSE CITY OF et al,

        Defendant.

Case Number: CV09-05527 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 18, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Carlos A. Ortega #09071890
Santa Clara County Corrections - San Jose
#CTL532
885 N. San Pedro Street
San Jose,  CA 95110

Dated: July 18, 2012

        Richard W. Wieking, Clerk
        By: Lisa Clark, Deputy Clerk